## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-cv-80119-ALTMAN

**CORY BARRANT SIVIK**,

 *Petitioner*,

*v.*

**STATE OF FLORIDA**,

 *Respondent.*

_____/

### ORDER

 Our Petitioner, Cory Barrant Sivik, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his state-court conviction for lewd or lascivious molestation of a child under the age of twelve. *See* Petition [ECF No. 1]. In his sole ground for relief, Sivik argues that he "was coerced into giving a false confession over the phone," in violation of his rights under the Fifth and Sixth Amendments. *Id.* at 5. After careful review, we **DENY** the Petition.

### THE FACTS

 The State of Florida charged Sivik by Amended Information with one count of sexual battery on a person less than twelve years of age (Count 1) and two counts of lewd or lascivious molestation of a child under the age of twelve (Counts 2 and 3). *See* Amended Information [ECF No. 10-1] at 33–34. The State alleged that Sivik "pulled down [the victim's] underwear and 'pushed hard' with his finger in her vagina" (the basis for Count 2) and that he "pulled" the victim's hand "and made her touch his penis" (the basis for Count 3). Probable Cause Affidavit [ECF No. 10-1] at 27–28. The victim was a six-year-old girl who was the daughter of Sivik's close friends. *See id.* at 27. During the investigation, law enforcement set up a controlled call between Sivik and the victim's mother, during

which Sivik made some incriminating statements. *See generally* Controlled Call Tr. [ECF No. 10-1] at 85–147.

On January 27, 2016, Sivik's trial counsel filed a motion to suppress the statements Sivik made during the controlled call. *See* Motion to Suppress [ECF No. 10-1] at 38–43. Counsel argued that law enforcement violated Sivik's rights under the Fifth, Sixth, and Fourteenth Amendments because the police used the victim's mother as a "state agent" to interrogate Sivik, even after he had invoked his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Motion to Suppress at at 41–42. The state trial court denied the motion to suppress, finding that: (1) Sivik's Sixth Amendment rights had not attached since he "had not been formally charged, indicted, arraigned, or arrested at the time of the controlled call," Order Denying Motion to Suppress [ECF No. 10-1] at 68; (2) Sivik's due-process rights were not violated because his "free will was not overcome to the point that his statements were coerced," *id.* at 74; and (3) law enforcement did not violate Sivik's *Miranda* rights because he had never been "in custody," *id.* at 76. Sivik filed a motion to reconsider the denial of his motion to suppress, contending that the state trial court failed to give proper weight to the Eleventh Circuit's decision in *Tukes v. Dugger*, 911 F.2d 508 (11th Cir. 1990). *See* Motion for Reconsideration [ECF No. 10-1] at 78–79. The state trial court summarily denied that motion for reconsideration. *See* Order Denying Motion for Reconsideration [ECF No. 10-1] at 82.

Sivik proceed to trial where, on August 1, 2017, a Palm Beach County jury found him guilty of lewd or lascivious molestation (as charged in Count 2) and attempted lewd or lascivious molestation (a lesser-included offense of Count 3). *See* Verdict [ECF No. 10-1] at 162–63.[1] The state trial court adjudicated Sivik guilty and sentenced him to forty-five years in the custody of the Florida Department

---

[1] The state-court docket indicates that the State *nolle prossed* the sexual battery count (Count 1) shortly before trial, on July 27, 2017. *See* State Court Docket [ECF No. 10-1] at 17.

of Corrections—to be followed by a lifetime term of probation as a sexual predator. *See* Judgment and Sentencing Orders [ECF No. 10-1] at 165–74.

Sivik appealed his conviction and sentence to the Fourth DCA. *See* Direct Appeal Notice of Appeal [ECF No. 10-1] at 176. In that appeal, Sivik advanced five arguments: (1) that law enforcement "failed to honor Sivik's invocation of his *Miranda* rights" by setting up the controlled call, Direct Appeal Initial Brief [ECF No. 10-1] at 208; (2) that Sivik's statements during the controlled call "were inadmissible on substantive due-process grounds," *id.* at 216; (3) that Sivik's statements during the controlled call "were involuntary, stemming from coercive interrogation tactics by state agents," *id.* at 220; (4) that the prosecutor repeatedly and improperly "asked the jury to put itself in [the victim's] shoes and render a verdict based on sympathy" during closing arguments, *id.* at 223; and (5) that the state trial court's sentence was improperly "based on the crime's impact on the victim's mother," *id.* at 228. On May 9, 2019, the Fourth DCA summarily affirmed the trial court in an unwritten opinion. *See Sivik v. State*, 272 So. 3d 1276, 1276 (Fla. 4th DCA 2019). On May 23, 2019,[2] Sivik filed a *pro se* "Motion for a Written Opinion," [ECF No. 10-2] at 21–23, but the Fourth DCA denied that motion on June 21, 2019, *see* Order Denying Motion for Written Opinion [ECF No. 10-2] at 25.

On July 28, 2020, Sivik filed a *pro se* motion for postconviction relief under FLA. R. CRIM. P. 3.850, *see* Postconviction Motion [ECF No. 10-2] at 29–32, and then amended his postconviction motion on January 19, 2021, *see* Amended Postconviction Motion [ECF No. 10-2] at 34–38. Sivik's sole argument in his Amended Postconviction Motion was that, in his efforts to impeach the victim's testimony, trial counsel was ineffective by failing to "depose or interview" the victim's three older brothers. *Id.* at 35. On June 8, 2023, the state postconviction court adopted the "facts, legal analyses,

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

and conclusions of law" in the State's Response and denied the Amended Postconviction Motion. *See* Order Denying Amended Postconviction Motion [ECF No. 10-4] at 128. Sivik appealed. *See* Postconviction Notice of Appeal [ECF No. 10-4] at 131. On November 30, 2023, the Fourth DCA affirmed the state postconviction court in an unwritten opinion. *See Sivik v. State*, 375 So. 3d 896, 897 (Fla. 4th DCA 2023). The Fourth DCA's mandate issued on December 21, 2023. *See* Postconviction Mandate [ECF No. 10-4] at 136.

Sivik filed this § 2254 Petition on January 29, 2024. *See* Petition at 15. The State thus concedes—and we agree—"that the Petition is timely." Response to Order to Show Cause ("Response") [ECF No. 9] at 8; *see also Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

## THE LAW

### I.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to

4

the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56

(quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or

not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral

review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid*. In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

## ANALYSIS

Sivik's sole argument is that he "was coerced into giving a false confession over the phone while authorities listened (unknowingly [sic] to Sivik)." Petition at 5.[3] To understand this argument, we'll have to recount the relevant sequence of events. Sivik voluntarily spoke with Detective Terwilliger of the Palm Beach County Sheriff's Office on January 6, 2015. *See* Order Denying Motion to Suppress [ECF No. 10-1] at 66. During that interview, "Detective Terwilliger read Defendant his *Miranda* rights and then began asking him questions about the case." *Ibid.* When the detective told Sivik "that his name came up during a sexual abuse allegation, Defendant requested a lawyer and the

---

[3] Other than saying that he was "coerced into giving a false confession," Sivik doesn't explain exactly how the controlled call violated his constitutional rights. Petition at 5. After reviewing Sivik's state-court briefing, we assume that Sivik is reiterating the same two Fifth Amendment arguments he presented to the Fourth DCA on direct appeal: (1) that law enforcement refused to honor Sivik's invocation of his *Miranda* rights by using "a state agent" (*i.e.*, the victim's mother) to "resume[ ] the interrogation" through the controlled call, Direct Appeal Initial Brief [ECF No. 10-1] at 212; and (2) that the statements Sivik made during the controlled call were "coerced" and violated his "privilege against self-incrimination," *id.* at 221–22. For two reasons, we won't consider any other arguments here. *One*, any arguments Sivik failed to present to the Fourth DCA would be unexhausted—and thus subject to dismissal. *See Mason*, 605 F.3d at 1119 ("That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." (cleaned up)). *Two*, Sivik bears the burden of presenting to us any arguments he wants us to consider—and his failure to present arguments clearly constitutes a waiver of those arguments. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

interview was terminated." *Ibid.* Sivik wasn't arrested, and he was allowed to leave. *See ibid.* Sivik then called and messaged the victim's mother soon after his interview, "wanting to know what was going on with [the victim] and requesting information." *Id.* at 67. The victim's mother contacted Detective Terwilliger, and the two agreed to set up a controlled call. *See ibid.* During this first phone call, "Defendant made no admission and denied any wrongdoing," but he agreed to have the victim's mother call him back after the victim met with the Department of Children and Families. *Ibid.* This second controlled call, which took place the next day (on January 7, 2015), is the subject of our Petition. *See ibid.*

The State asks us to dismiss the Sixth Amendment portion of Sivik's claim as unexhausted "since it was first raised in the instant Petition." Response at 11. And, while the State concedes that Sivik properly exhausted his Fifth Amendment argument, it urges us to deny this part of the claim on the merits because: (1) Sivik "was not in custody during the subject controlled call," *id.* at 16; and (2) the state trial court reasonably concluded that Sivik's "statements during the controlled call were not coerced," *id.* at 18. We agree with the State on all counts.

## I.    The Sixth Amendment Claim

For starters, we agree with the State that Sivik's Sixth Amendment claim is unexhausted and procedurally defaulted. Although Sivik briefly referenced the Sixth Amendment in his pretrial motion to suppress, *see* Motion to Suppress [ECF No. 10-1] at 40 ("In order to give the Sixth Amendment and other constitutional protections any weight the government must be prohibited from conducting indirect surreptitious interrogations when a suspect has exercised their rights."), he never advanced a Sixth Amendment argument on direct appeal, *see generally* Direct Appeal Initial Brief [ECF No. 10-1] at 179–231. Since Sivik never took his Sixth Amendment claim "to the state's highest court, either on direct appeal or on collateral review," that claim is unexhausted and must be dismissed. *Ward*, 592 F.3d at 1156.

But here's the thing: Even if Sivik *had* exhausted his Sixth Amendment claim, we would have denied it on the merits. *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past."). The Sixth Amendment "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," which includes any interrogation conducted by the State. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *Massiah v. United States*, 377 U.S. 201, 204–05 (1964)). But a defendant's Sixth Amendment rights "do[ ] not attach until a prosecution is commenced"—which occurs at "the initiation of adversary judicial criminal proceedings . . . by way of formal charge, preliminary hearing, indictment, information, or arraignment[.]" *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (cleaned up). The controlled call took place on January 7, 2015. *See* Controlled Call Tr. [ECF No. 10-1] at 86. But Sivik wasn't arrested or charged with a crime until the next day, January 8, 2015. *See* Probable Cause Affidavit [ECF No. 10-1] at 28 (signed and dated January 8, 2015); State-Court Docket [ECF No. 10-1] at 2 (indicating that proceedings in Sivik's criminal case didn't commence until January 8, 2015). Since the controlled call took place *before* "the initiation of adversary judicial proceedings" against Sivik, the Sixth Amendment doesn't apply to that call. *Rothgery*, 554 U.S. at 198; *see also Moran v. Burbine*, 475 U.S. 412, 430 (1986) ("By its very terms, [the Sixth Amendment] becomes applicable only when the government's role shifts from investigation to accusation.").

We therefore **DISMISS** Sivik's Sixth Amendment claim as unexhausted and procedurally defaulted. As we've explained, however, even if the claim had been exhausted, we would have denied it on the merits.

## II.     The Fifth Amendment Claim

By contrast, "[t]he Fifth Amendment prohibits the admission at trial of compelled testimonial self-incriminating statements—[such as] inculpatory statements made to law enforcement while in

custody—providing, in relevant part that 'no person shall be compelled in any criminal case to be a witness against himself.'" *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1295 (11th Cir. 2007) (cleaned up & quoting U.S. CONST. amend. V). The Fifth Amendment thus ensures that, if a "confession was coerced or compelled, it [cannot] be used to convict a defendant." *Malinski v. New York*, 324 U.S. 401, 404 (1945). In *Miranda*, the Supreme Court "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) (quoting *Miranda*, 384 U.S. at 467). Then, in *Edwards v. Arizona*, 451 U.S. 477 (1981), the Court "established a second layer of prophylaxis for the *Miranda* right to counsel: Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation 'until counsel has been made available to him[.]'" *Id.* at 176–77 (quoting *Edwards*, 451 U.S. at 484–85). Of course, the "presumption from [*Edwards*] is not 'eternal,'" *Maryland v. Shatzer*, 559 U.S. 98, 120 (2010) (Stevens, J., concurring), and it only applies when the suspect is subjected to "custodial interrogation," *Bowen v. Sec'y, Fla. Dep't of Corr.*, 92 F.4th 1328, 1334 (11th Cir. 2024) ("Instead, [the *Miranda-Edwards* protections] apply only in custodial interrogation.").

Sivik believes that his Fifth Amendment rights were violated because he "was coerced into giving a false confession over the phone while authorities listened (unknowingly [sic] to Sivik)." Petition at 5. The state trial court denied the motion to suppress in a thorough and detailed order. *See* Order Denying Motion to Suppress [ECF No. 10-1] at 65–76.[4] It reasoned that the controlled call

---

[4] Under AEDPA's standard of review, we consider "the highest state court decision reaching the merits of a habeas petitioner's claim" and determine whether it (1) reasonably applied clearly established federal law and (2) reasonably determined the facts in light of the evidence presented. *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). The "highest state court" to consider Sivik's claims (the Fourth DCA) affirmed the trial court's denial of Sivik's motion to suppress in an unreasoned opinion, *see Sivik*, 272 So. 3d at 1276, so we must "'look through' the unexplained decision to the last-related state-court decision that provide a relevant rationale" and presume "that the unexplained decision adopted the same reasoning," *Wilson*, 584 U.S. at 125. That's why the state trial court's order denying Sivik's motion to suppress is the operative "reasoned decision" we review under

didn't violate Sivik's Fifth Amendment rights because, "even though [law enforcement] read Defendant his *Miranda* rights, and Defendant invoked those rights, the police were not required to honor that request because Defendant was not in custody." *Id.* at 76. The state court also rejected Sivik's contention that the nature of the controlled call itself was inherently coercive, since "Defendant was free to end the conversation at any time, but chose to continue talking for almost an hour." *Id.* at 74. In so holding, the state court reasonably applied clearly established federal law to the uncontested facts.

### A. The State Court Reasonably Applied the *Miranda-Edwards* Rule

We'll start with the *Miranda* issue. Sivik says that the controlled call violated the prophylactic rule the Supreme Court outlined in *Miranda* because law enforcement reinitiated contact with him *after* he had invoked his right to counsel. *See* Direct Appeal Initial Brief [ECF No. 10-1] at 209 ("Here, Sivik unequivocally invoked his *Miranda* rights during the stationhouse interview. . . . Instead of honoring his invocation, the Detective initiated two controlled calls, during which she used a State Actor [the victim's mother] to extract an uncounseled confession.").[5] As we've said, however, *Miranda* "does not require a warning, or otherwise impose restrictions, anytime police speak with someone— even if that someone is a suspect. Instead, its protections apply only in custodial interrogation." *Bowen*, 92 F.4th at 1334; *see also Montejo*, 556 U.S. at 795 ("*Montejo* also correctly observes that the *Miranda-Edwards* regime . . . applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups). . . . When a defendant is not

---

AEDPA.

[5] Again, Sivik does not advance this argument in his Petition. He, instead, makes the conclusory allegation that his statements during the controlled call should have been suppressed under the Fifth Amendment because he felt "coerced." *See* Petition at 5; *see also ante*, at note 3 (first citing *Campbell*, 26 F.4th at 873; then citing *Hamilton*, 680 F.3d at 1319; and then citing *In re Egidi*, 571 F.3d at 1163). Nevertheless, and in the interest of completeness, we'll address (and reject) each of the arguments Sivik asserted in state court, which appear to form the basis of his claim here.

in custody, he is in control, and need only shut his door or walk away to avoid police badgering."). Sivik concedes that he wasn't in custody when the controlled call was made. *See* Suppression Hr'g Tr. [ECF No. 11-1] at 9 ("[The Prosecutor]: Well, are you guys arguing that [Sivik] was in custody for *Miranda* purposes? [Defense Counsel]: No."); *see also* Direct Appeal Initial Brief [ECF No. 10-1] at 209 ("Sivik's stationhouse interview was noncustodial."). And that's really the end of that. *See United States v. Manor*, 936 F.2d 1238, 1241 (11th Cir. 1991) ("[T]he protections of *Miranda* apply only to custodial interrogation[s] which the Supreme Court defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" (quoting *Miranda*, 384 U.S. at 444)); *see also, e.g.*, *Pedone v. Sec'y, Dep't of Corr.*, 2013 WL 2177668, at *3 (M.D. Fla. May 20, 2013) (Honeywell, J.) ("Petitioner has not shown that the controlled telephone call was in any manner invalid. Petitioner was not in custody when he made the statements[.]").

Still resisting, Sivik notes that Detective Terwilliger read him his *Miranda* rights—and that he invoked those rights—*before* the controlled call took place. *See* Direct Appeal Initial Brief [ECF No. 10-1] at 214 ("In sum, the police violated *Miranda* by resuming questioning after Sivik's *Miranda* invocation[.]"). And, in Sivik's view, the state trial court's conclusion that "the police may disregard a suspect's *Miranda* invocation [even] after giving the *Miranda* warnings [in a non-custodial interview]," was wrong as a matter of law given the Eleventh Circuit's decision in *Tukes v. Dugger*, 911 F.2d 508 (11th Cir. 1990). *Ibid.* Here, again, Sivik misstates the law.

In *Tukes*, the defendant claimed that "the statement he made at his home before he left with the police officers ('I am going to have to get lawyers.') constituted a request for counsel that should have been honored by the police." 911 F.2d at 515. Although the Eleventh Circuit found that "Tukes was not in custody, [so] he may not obtain relief under *Edwards*," *id.* at 515–16, it went on to suggest (in a footnote) that, had Tukes explicitly invoked his *Miranda* rights, those protections *might* have

applied during an otherwise non-custodial interrogation, *see id.* at 516 n.11 ("The state contends that because Tukes was not in custody when he was read his *Miranda* warnings, had he invoked his right to counsel the police would have been free to ignore that invocation. The state's position is without merit. If the state were free to tell a suspect that he had the right to an appointed lawyer, but could, while continuing to interrogate, refuse to provide the lawyer on the ground that the suspect was not actually in custody, the suspect would be led to believe that no request for counsel would be honored."); *see also, e.g., United States v. Moreno*, 2012 WL 1068638, at *10 (N.D. Ga. Mar. 8, 2012) (Baverman, Mag. J.) ("Nothing prevents police officers from advising suspects of *Miranda* rights when they are not in custody, but when officers do advise subjects of their *Miranda* rights, they cannot ignore the subject's invocation of those very rights."), *report and recommendation adopted*, 2012 WL 1068532 (N.D. Ga. Mar. 29, 2012) (Thrash, J.). By failing to consider this footnote, Sivik says, the state trial court erred. *See* Direct Appeal Initial Brief [ECF No. 10-1] at 209–10.

Two problems with this. *One, Tukes*'s footnote 11 is dicta—it being entirely unnecessary to the court's holding that the *Miranda-Edwards* rule didn't apply because Tukes wasn't in custody. *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) ("[D]icta is 'a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case.'" (quoting *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004))). And, to prevail on his habeas petition, Sivik cannot rely on non-binding dicta. *See Williams*, 529 U.S. at 412 (holding that "clearly established federal law," as defined by § 2254(d)(1), "refers to the holdings, *as opposed to the dicta*," of judicial opinions (emphasis added)); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) ("We are not required to follow dicta in our own prior decisions. Nor for that matter is anyone else." (cleaned up)).

*Two*, the *Tukes* footnote didn't squarely address the situation we have here. Unlike the hypothetical the Eleventh Circuit took up in that footnote, it's undisputed that, once Sivik invoked

his *Miranda* rights, Detective Terwilliger ended the interview and allowed Sivik to leave. *See* Order Denying Motion to Suppress [ECF No. 10-1] at 66. The Fifth Amendment issue in our case is whether law enforcement violated the *Miranda-Edwards* rule by reinitiating contact with Sivik (through the victim's mother) *the day after* he invoked his *Miranda* rights (during another non-custodial interview). We think the holdings in *Miranda* and *Edwards* resolve our issue. *Miranda*, remember, requires "police interrogators to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments" and to end an interrogation "when an accused has invoked his right to have counsel present during [his] custodial interrogation[.]" *Michigan v. Harvey*, 494 U.S. 344, 350 (1990) (cleaned up). Since Sivik wasn't in custody during the first interview, he wasn't entitled to *Miranda* warnings. Still, we think Detective Terwilliger behaved appropriately by discontinuing that interview as soon as Sivik asked to speak with a lawyer. And that's exactly what the footnote in *Tukes* recommends. Again, speaking in hypotheticals, the court in *Tukes* suggested that police investigators honor a suspect's invocation of his *Miranda* rights **during an interview**—even if *Miranda* normally wouldn't apply **during that interview**. *See Tukes*, 911 F.2d at 516 n.11 ("If the state were free to tell a suspect that he had the right to an appointed lawyer, but could, **while continuing to interrogate**, refuse to provide the lawyer on the ground that the suspect was not actually in custody, the suspect would be led to believe that no request for counsel would be honored." (emphasis added)).

*Edwards* adds a "second layer of prophylaxis" to *Miranda* by requiring law enforcement to cease *any* "further interrogation until counsel has been made available to [the suspect]." *McNeil*, 501 U.S. at 177 (cleaned up); *see also Harvey*, 494 U.S. at 350 ("*Edwards* thus established another prophylactic rule designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."). But we've found no case anywhere in the country holding that *Edwards* prevents law enforcement from conducting a **second** non-custodial interview with a suspect after the suspect

invoked *Miranda* in an earlier non-custodial interview. In fact, the Supreme Court has suggested just the opposite:

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation" . . . . If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*McNeil*, 501 U.S. at 182 n.3. And, in *Bobby v. Dixon*, 565 U.S. 23 (2011), the Court expressly held that a defendant who invoked *Miranda* in a non-custodial interview could be interviewed five days later. *See id.* at 27–28 ("First, according to the Sixth Circuit, the *Miranda* decision itself clearly established that police could not speak to Dixon on November 9, because on November 4 Dixon had refused to speak to police without his lawyer. That is plainly wrong. It is undisputed that Dixon was not in custody during his chance encounter with police on November 4. And this Court has 'never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" (quoting *McNeil*, 501 U.S. at 182 n.3)); *see also Robertson v. Pichon*, 849 F.3d 1173, 1186 (9th Cir. 2017) ("Second, even though a police officer could infer that Robertson's statement that he would not submit to chemical testing without a lawyer meant that Robertson also wanted a lawyer for subsequent questioning, *McNeil* tells us that 'the likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*[.]'" (quoting *McNeil*, 501 U.S. at 178)).

As we've said, a petitioner can only prevail under § 2254 if the state court's decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). In other words, the state court's decision must be "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Richter*, 562 U.S. at 103). Sivik hasn't come close to meeting that

high bar here. For starters, the state court correctly held that the *Miranda-Edwards* rule doesn't apply to non-custodial interviews. *See Montejo*, 556 U.S. at 795 ("If the defendant is not in custody then [the *Miranda-Edwards* regime] do[es] not apply[.]"). And it then reasonably concluded that Sivik's prior invocation of *Miranda* in a non-custodial interview didn't bar law enforcement from reinitiating contact with him (in a second non-custodial call) the next day. *See McNeil*, 501 U.S. at 182 n.3 ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation[.]'"). Sivik has thus failed to show that the state trial court misapplied the *Miranda-Edwards* rule when it denied his motion to suppress.

**B.  The State Court Reasonably Found that Sivik's Statements Weren't Coerced**

In his second Fifth Amendment argument, Sivik says that the controlled call was, by its nature, inherently coercive. *See* Petition at 5 ("Sivik was coerced into giving a false confession over the phone[.]"). We disagree.

"The Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial." *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005) (citing *Bram v. United States*, 168 U.S. 532, 542 (1897)). But cases "in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled'" are (absent a *Miranda* violation) exceptionally rare. *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984). We consider the "totality of the circumstances" to determine whether a defendant's statement "was the product of 'an essentially free and unconstrained choice.'" *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003) (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)); *see also United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992) (holding that a statement must be "the product of a free and deliberate choice rather than [by] intimidation, coercion or deception" (quoting *Colorado v. Connelly*, 479 U.S. 157, 170 (1986))). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long

interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." *Mendoza-Cecelia*, 963 F.2d at 1475.

Sivik's Petition fails to explain how the controlled call was "coercive," *see generally* Petition, which is reason enough to stop here, *see ante*, at notes 3 & 5. Nor would Sivik have prevailed on the argument he presented to the Fourth DCA on direct appeal. As we've said, Sivik told the Fourth DCA that the victim's mother "forcefully accused Sivik of guilt," indicated that confessing was the only way to "honor" the victim's deceased uncle (and Sivik's friend), "assured him that she got to decide whether charges were filed," comforted him that (if he confessed) the case would "go away," and suggested that "refusing to answer questions would carry penalties[.]" Direct Appeal Initial Brief [ECF No. 10-1] at 221–22. Again, we presume that, by summarily affirming Sivik's conviction, the Fourth DCA adopted the state trial court's holding that Sivik's statements *weren't* coerced because: (1) the "Defendant was not in a coercive environment when the conversation took place"; (2) the conversation was with a "friend whom Defendant had known for years, not a law enforcement officer"; and (3) the "Defendant was not likely under the impression that his statements [to the victim's mother] were going to result in his absolution." Order Denying Motion to Suppress [ECF No. 10-1] at 72. We agree with these conclusions.

*First*, Sivik was the one who initiated the contact with the victim's mother—not the other way around. *See* Order Denying Motion to Suppress [ECF No. 10-1] at 67 ("Defendant sent [the victim's mother] messages wanting to know what was going on with [the victim] and requesting information."); *see also* Sivik's Message History [ECF No. 10-1] at 160 (showing that Sivik left the victim's mother a voicemail at 9:15 p.m. on January 6, 2015, and then sent her a text message at 9:22 p.m. later that day). A person who begins a conversation cannot later blame the other party for "coercing" him into the conversation. *See Palmes v. Wainwright*, 725 F.2d 1511, 1516 (11th Cir. 1984) ("Perhaps most indicative of the voluntariness is that for four days prior to October 29th police officers had not contacted

appellant and that it was the appellant who initiated the contact."); *accord Connelly*, 479 U.S. at 160 (admitting statement of the defendant who "approached Officer Anderson and, without any prompting, stated that he had murdered someone and wanted to talk about it").

*Second*, Sivik was speaking to a long-time friend, not a law enforcement officer. Statements to friends and family are almost always voluntary since a defendant isn't likely to be coerced by the specter of governmental authority when he's speaking to someone he trusts. *See United States v. Stubbs*, 944 F.2d 828, 832 (11th Cir. 1991) (rejecting argument "that the circumstances of [the defendant's] conversation with her friend and fellow prisoner reflected compulsion"); *United States v. Anderson*, 2012 WL 3648189, at *2 (W.D.N.Y. May 29, 2012) ("It is settled that a 'coercive atmosphere' is lacking when an inmate speaks to someone he considers a friend or loved one." (citing *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997))), *report and recommendation adopted*, 2012 WL 3648142 (W.D.N.Y. Aug. 23, 2012). And the fact that law enforcement used someone Sivik trusted "to mislead [Sivik] or lull him into a false sense of security" doesn't "rise to the level of compulsion or coercion." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990); *see also United States v. Cook*, 599 F.3d 1208, 1214 (10th Cir. 2010) ("Deception which takes advantage of a suspect's misplaced trust in a friend or fellow inmate does not implicate the right against self-incrimination nor the Fifth Amendment right to counsel.").

*Third*, the state court reasonably concluded that the mother's statements to Sivik didn't coerce Sivik into confessing. Sivik says that, during the call, the victim's mother implied that Sivik wouldn't be prosecuted if he confessed. *See, e.g.*, Controlled Call Tr. [ECF No. 10-1] at 88 ("[Victim's Mother]: Well [the police] told us they can't press charged [sic] without our permission . . . . If you can just like tell me why they might even think this, I can just let it go away."). This, we admit, is Sivik's strongest argument since admissions of guilt are generally deemed coercive when they're exchanged for promises of leniency. *See United States v. Lall*, 607 F.3d 1277, 1287 (11th Cir. 2010) ("This statement clearly implies that, if the Secret Service had made the promise that Lall's confession would not be

used to prosecute him, then such an assurance would have rendered the confession involuntary."). But the state court reasonably concluded that Sivik didn't take these "promises" at face value since Sivik "made several statements during the controlled call that his lawyer had warned him about talking to [the victim's mother] and that he was going to go to jail forever," and that the mother's words couldn't have "[carried] the same weight and influence that they would carry coming from a law enforcement officer." Order Denying Motion to Suppress [ECF No. 10-1] at 72. Again, we agree with the state court.

For one thing, Sivik wasn't speaking to law enforcement, so he had no reason to believe in the mother's ability to stop the prosecution—even if she demanded it. For another, Sivik admits that he continued talking to the victim's mother—*not* because he wanted to make the charges "go away" by confessing—*but* because he "felt obligated to remedy the relationship/situation anyway possible by telling the mother what she wanted to hear." Petition at 5. And the Fifth Amendment isn't "concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *Oregon v. Elstad*, 470 U.S. 298, 304–05 (1985); *see also Connelly*, 479 U.S. at 170 ("Respondent urges this Court to adopt his 'free will' rationale, and to find an attempted waiver invalid whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if the compulsion does not flow from the police. But such a treatment of the waiver issue would cut this Court's holding in *Miranda* completely loose from its own explicitly stated rationale." (cleaned up)).[6]

---

[6] Even if the state court got this one wrong (and we don't think it did), the error was not "so obviously wrong" as to be "beyond any possibility for fairminded disagreement." *Kayer*, 592 U.S. at 118. In rejecting Sivik's argument, the state court relied heavily on the Tennessee Supreme Court's decision in *State v. Sanders*, 452 S.W.3d 300 (Tenn. 2014), *see* Order Denying Motion to Suppress [ECF No. 10-1] at 73–74, which held that the defendant's "will was not overborne" when the victim's mother (who was wearing a wire) confronted and questioned the defendant, even though the mother told the defendant that "she could 'stop this thing'" if he cooperated. *Sanders*, 452 S.W.3d at 317. The trial court would have also been bound by the decision in *Bevard v. State*, 976 So. 2d 1163 (Fla. 5th DCA 2008), where the Fifth DCA found the defendant's confession voluntary, even though he only confessed after he was angrily confronted by the victim's mother (who was working with law enforcement) in his own home. *See id.* at 1165 ("Here, while the mother of the victim did some yelling

We therefore conclude that the state court reasonably applied Fifth Amendment precedent when it held that Sivik's statements during the controlled call weren't coerced.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development here.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because jurists of reason wouldn't debate our assessment of Sivik's constitutional claim, we'll **DENY** any request for a COA.

---

and cursing, and threatened to tell anyone who asked that Mr. Bevard was a pedophile, it is likewise clear that Mr. Bevard invited her into his residence, and made little effort to get her to leave."). Since multiple courts around the country have applied the Fifth Amendment in the same way the state court did here, we cannot say that the state court's application of federal law was so unreasonable that "no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012).

*       *       *

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on April 9, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Cory Barrant Sivik, *pro se*
        counsel of record